## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**JAMEY LYNN BROWN,**
             **Plaintiff,**

**v.**                                                    **Case No: 5:09cv180/RS/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
             **Defendant.**

_____

### REPORT AND RECOMMENDATION

         **This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Brown's application for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Act.**

         **Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.**

## PROCEDURAL HISTORY

Ms. Brown filed applications for benefits claiming an onset of disability as of August 13, 2004. The applications were denied initially and on reconsideration, and Ms. Brown requested a hearing before an administrative law judge (ALJ). A hearing was held on March 23, 2007 at which Ms. Brown was represented by counsel and testified. A vocational expert also testified. The ALJ entered an unfavorable decision (tr. 18-25) and Ms. Brown requested review by the Appeals Council without submitting additional evidence. The Appeals Council declined review (tr. 5-7). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that Ms. Brown met the insured status requirements of the Act through December 31, 2004 and therefore in order for her to be entitled to disability insurance benefits under Title II, she had to prove she was disabled as of that date (the date last insured); that she had not engaged in substantial gainful activity since August 13, 2004; that she had severe impairments of (1) degenerative disc disease, (2) chronic obstructive pulmonary disease (COPD), (3) diverticulitis, and (4) colitis, but that she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; that she had the residual functional capacity to perform light work activity lifting 20 pounds occasionally and 10 pounds frequently, sitting for two hours in an eight hour day, standing and/or walking for up to six hours in an eight hour day, avoiding environmental pollutants, and reaching overhead; that she was able to perform her past relevant work as a cashier/checker; that she was 49 years old as of her claimed onset date with a high school education; that using the medical-vocational rules as

a framework in addition to the opinion of a vocational expert, there were jobs that exist in significant numbers in the national economy that she could perform; and that Ms. Brown was not under a disability as defined in the Act through the date of the ALJ's decision (tr. 18-25).

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the

evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir.1985)). If the claimant establishes such an impairment, the burden shifts to the

Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11th Cir. 1987). If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner. *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Ms. Brown's primary care physician is Christopher S. Cosper, M.D., a family practitioner. She has seen Dr. Cosper on a fairly regular basis from January 2001 at least through December 12, 2005. Other than routine medical problems, she has complained primarily of abdominal pain with diarrhea. Dr. Cosper's records mention possible diverticulitis as early as January 2003 (tr. 537-557). Ms. Brown went to the emergency room on May 23, 2002 complaining of nausea and diarrhea. An abdominal x-ray was normal and she was released home (tr. 190-203). She returned on June 15, 2002 with the same complaints (tr. 247-258). Ms. Brown went to the emergency room complaining of stomach problems, nausea and/or diarrhea on May 25, 2003 (when she was admitted for three days for observation); on June 22, 2003 (again admitted for three days for observation); on November 1, 2003 (admitted for three days for observation and a colonoscopy which revealed mild sigmoid diverticulitis) (tr. 274-293); on November 6, 7 and 9, 2003 (tr. 294 -318); on March 1, 2004 (admitted for three days for observation); on October 4, 2004 (admitted for nine days for observation); and on February 1, 2005. On that last visit, her gallbladder was removed (tr. 438-448).

On July 21, 2005, Dr. Cosper gave a sworn statement. He indicated that he had been treating Ms. Brown since approximately March 2000 and that in the year prior to him having given a statement she had been seen in the hospital once a month, perhaps more (tr. 579). He also stated that the problems she related with

malaise, fatigue and diarrhea were all related and were due to low potassium levels caused primarily by loss of bodily fluids (tr. 581). He testified that she would not be capable of doing work on a 40 hour work week basis and that she would probably miss as much as five workdays per month (tr. 583). He felt that she could not lift greater than 15 pounds occasionally, would have to lie down during the day and that although the medication she was taking could cause side effects, she had never complained of any side effects with them (tr. 586-588). He speculated that Ms. Brown probably had one or two bouts of diarrhea per day but it sometimes increased to numerous times per day which would make it difficult for her to work (tr. 588-589). Finally, his opinion was that Ms. Brown's pain would be present to such an extent as to be distracting to the adequate performance of activities or work (tr. 585).

After Ms. Brown's gallbladder was removed her diarrhea was not mentioned again until a year later, in December 2005, when she told Dr. Cosper that she had suffered from chronic diarrhea since October 1 of that year and had injured her ankle (tr. 482-485). Dr. Cosper referred Ms. Brown to Dr. Marcella. Dr. Marcella reported that Ms. Brown presented with a left ankle brace but was unable to toe walk. The ankle did not appear to be swollen and there was some range of motion, although limited. Abdominal examination showed tenderness to palpation but no rebound. Examination of the low back showed some lumbosacral tenderness primarily to the right of the midline at the lumbosacral region. Four out of five Waddell's signs were positive. These were (1) superficial non-anatomic tenderness as evidenced by radiation of pain to the leg with skin roll or light pinch, (2) stimulation test was positive as evidenced by patient reporting low back pain with hip rotation leaving the shoulders and hips in the same place, (3) the distraction test produced positive findings with positive leg raise at 10° on the right and 15° on the left in the supine position, and (4) Ms. Brown was able to sit upright and her legs could be straightened out without reproducing this pain. Non-physiological disturbance pain, sensation or weakness was also evidenced. Neurological examination revealed a

non-radicular distribution of dysesthesia in the right lower extremity but there appeared to be some asymmetry in the calf muscles with the left being somewhat smaller than the right. Dr. Marcella indicated that he planned to obtain x-rays of the ankle and have some imaging studies of the lumbosacral area. He did not provide Ms. Brown with any pain medication and was not convinced that he would be able to do so in the future (tr. 602-603). There is no record that Ms. Brown returned to Dr. Marcella.

Nearly a year later, Ms. Brown fell off her porch and broke her shoulder. She was placed in an immobilizer. Dr. Cosper referred her to Dr. Alford whom she saw on December 27, 2005. Ms. Brown filled out a multi page history form. She listed her chief complaints as (1) stomach, (2) left ankle, (3) right elbow, collarbone, (4) muscles. She indicated that the cause of the pain was a "fall." When asked about the character of the pain she checked boxes indicating piercing, stabbing, shooting, cramping, aching, tingling, intolerable, very intense, unbearable, distressing, miserable, awful, and agonizing, among others. Under the section asking what conditions she suffered as a result of the pain, she checked nausea, anxiousness, spasm, sleeplessness, weakness, depression and numbness. She did not check bowel/bladder dysfunction.

Dr. Alford felt that the immobilizer would be sufficient to deal with a small fracture in the shoulder (tr. 609). Dr. Alford saw Ms. Brown three more times, on November 10 and December 18, 2006 and January 2, 2007. On the last visit there was no real tenderness around the shoulder blade and no swelling but Ms. Brown was exquisitely tender all around her proximal humerus. There was no clinical dislocation but there was pain with any attempted range of motion. Dr. Alford noted "I am failing miserably with Ms. [Brown]. I will see if I can get her in to see Dr. Judson Moore next week and I certainly would appreciate any insight (tr. 606-608).

Ms. Brown was seen by Dr. Moore on January 10, 2007. He reviewed x-rays that showed a proximal humerus fracture that was not completely healed but was

healing.  The shoulder had been in an immobilizer for three months.  Dr. Moore told her to throw away her shoulder immobilizer and start moving her shoulder.  He gave her some exercises to do and told her to use that arm as much as she could tolerate (tr. 605).

Ms. Brown was seen by Kamal Zawahry, M.D., a specialist in pulmonary medicine and internal medicine at the request of the State Division of Disability Determinations on January 10, 2005.  She complained of recurrent nausea, shortness of breath on moderate exertion and wheezing at times.  She denied any chronic coughing, history of hemoptysis, night sweats or night fever.  Her abdomen was soft and non-tender and there were no palpable masses.  She had full range of motion in all extremities with no swelling or clubbing.  On neurological examination she was alert and oriented, her cranial nerves were intact, deep tendon reflexes were normal and equal, muscle tone was within normal limits, motor examination was satisfactory and her sensory was intact.  There was no tenderness in the lower back and no spasm.  Straight leg raising was negative.  Dr. Zawahry's impression was COPD secondary to chronic smoking with bronchial asthma and a history of recurrent diverticulitis.  He noted that there were no clinical signs of significant respiratory impairment and that the frequency and severity of the asthma appeared to be mild to moderate.  There were no clinical signs of diverticulitis or diverticulosis by examination.  Dr. Zawahry stated that in his opinion Ms. Brown could do work-related activities (tr. 394-395).

## DISCUSSION

Ms. Brown argues that the ALJ erred in failing to give appropriate weight to the opinion of her treating physician and in failing to pose a complete hypothetical to the vocational expert, and that she was disabled from her onset date.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether

the ALJ's decision that Ms. Brown was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

    1.    <u>Treating physician opinion.</u>

    Ms. Brown's first argument in support of reversal is that the ALJ did not give proper weight to the opinion of her treating physician. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis*, 125 F.3d at 1440 (citing cases).

    If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4)

consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 CFR § 404.1527(d)(1); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips*, 352 F.3d at 1241. Failure to do so is reversible error. *Lewis*, 125 F.3d at 1440 (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

As noted above, Dr. Cosper gave a sworn statement in which he opined that Ms. Brown could not work because her bowel problems would keep her off work for as much as five days per month. The ALJ first noted that Dr. Cosper's opinion that Ms. Brown could not work was an issue left to the Commissioner, and that the ALJ was not bound by such a statement. A treating physician's opinion that a patient is "unable to work" or is "disabled" is not dispositive for purposes of Social Security claims. The Commissioner's regulations and the interpretations of those regulations clearly provide that an ALJ should give weight to a physician's opinions concerning the nature and severity of a claimant's impairments, but that the ultimate question

---

[1]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

of whether there is disability or inability to work is reserved to the Commissioner. For instance, Title 20 C.F.R. § 404.1527(e)(1) specifically states that a finding of disability or inability to work by a medical source does not mean that the Commissioner will automatically reach the same conclusion. *See also* Title 20 C.F.R. § 416.927(e). Furthermore, the Commissioner "will not give any special significance to the source" of an opinion on issues reserved for the Commissioner. Title 20 C.F.R. § 404.1527(e)(3) and § 416.927(e)(3); *see also* Social Security Ruling 96-5p (whether an individual is disabled is a question reserved to the Commissioner; treating source opinions on such questions are "never entitled to controlling weight or special significance"). Although such opinions on disability are not entitled to controlling weight, they must not be ignored, and the Commissioner must examine the entire record to determine whether such opinions are supported by the record. SSR 96-5p. In *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) the court reversed the ALJ's finding of no disability, in part because the ALJ relied on a treating physician's report that the claimant could no longer work as a longshoreman when this report was ambiguous as to whether the claimant could do *any* work, and the physician subsequently wrote a letter saying the claimant was completely disabled.

The ALJ also found that Dr. Cosper's opinion was not supported by his own records. The medical records repeatedly made reference to diverticulitis but there was only rare mention of diarrhea. The ALJ also found that Dr. Cosper had never placed any restrictions on Ms. Brown's activities. Finally, the ALJ noted that there were no objective findings to support a claim of disability due to diarrhea.

The ALJ's findings were support by substantial record evidence. Particularly on the issue of frequency of being off work, Dr. Cosper's opinion was unsupported. He testified on July 21, 2005 that Ms. Brown had been hospitalized monthly or more often over the previous year. However, the record shows that at the time Dr. Cosper gave his statement Ms. Brown had been to the hospital only three times in the

previous fifteen months: in October 2004 for eleven days because of diverticulitis and bowel problems (tr. 381-93), to the emergency room in January 2005 for chest pain and upper quadrant pain (tr. 409-15), and for three days in February 2005 for gallbladder surgery (tr. 438-48).  And notably, the record shows no hospital visits from the time of her gallbladder surgery until the ALJ's hearing, two years later.  During those two years she mentioned diarrhea only once (tr. 482), and when she was examined by Dr. Alford she denied any bowel or bladder problems.  Thus, not only was Dr. Cosper's description of Ms. Brown's previous history incorrect, his prediction was not supported by the subsequent medical treatment record.  The ALJ's finding on this issue was supported by substantial record evidence and Ms. Brown is not entitled to reversal.

    2.    Hypothetical.

    Ms. Brown's second ground for relief concerns the hypothetical the ALJ posed to the vocational expert.  She argues that the ALJ did not include all of her medical conditions in the hypothetical.    A hypothetical question must comprehensively describe the plaintiff's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence.  *Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985).  However, "the ALJ [is] not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004).

    Here the hypothetical posed to the vocational expert - that Ms. Brown had the residual functional capacity to perform light work activity lifting twenty pounds occasionally and ten pounds frequently, sitting for two hours in an eight hour day, standing and/or walking for up to six hours in an eight hour day and avoiding environmental pollutants and overhead reaching (tr. 21, 630).  The vocational expert opined that Ms. Brown could work as cashier/checker, general office clerk, and counter attendant (tr. 636-37).  The ALJ did not include Dr. Cosper's opinions in the

hypothetical because he rejected them. *Crawford, supra.* Ms. Brown has not shown error on this issue and is not entitled to reversal.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 24th day of May, 2010.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).